The Chief Justice delivered the opinion of the court.
This case brings before us questions upon the liability of an administrator and the mode of charging him in account, arising upon a decree made by the Orphans’ Court of the county of Salem. To the proper understanding and correct determination of these matters a view of the proceedings in that court and some of the most material facts exhibited in the return made to the writ of certiorari is indispensable.
At March term, 1822, the account of the plaintiff in certiorari, Eleazer Mayhew, as administrator of John Johnson, *73] deceased, *was reported by the surrogate. In this account, which was sworn to, in the usual form by the administrator, on the 6th March, 1822, he is charged, on the 17th November, 1819, with the amount of the inventory $2,714.52, and on the 6th May, 1820, and the 20th January, 1821, with the sums arising from the sales of real estate of the deceased, amounting together to $3,412; and these, •with some moneys received from matters not included in the inventory, make the debit side of the account $6,223.79. The credit side of the account claims allowance for sundry disbursements $1,058.74; for a note appraised but not recovered'$49.45 ; for a debt due ,t.he administrator $154.07; and for commissions $497.87, making $1,760, and leaving, as set forth in the account, a balance of $4,463.66 in the hands of the accountant, to be applied to the discharge of the debts of the deceased. By a rule of the court of the same March *93 term, leave was given to Cornelius Johnson to file exceptions against the account, and they were filed on the fifth day of the next month.
In the term of June, 1822, the parties were heard on the exceptions, and it appearing “ that a' number of receipts stated as debts of preference, were not debts of preference according to law,” and that the administrator had not “ proceeded agreeably to the act respecting the settlement of the estates of decedents who die insolvent ” the court set aside “ the whole account for want of legal form,” and ordered tlio administrator “to take a rule directing the creditors to exhibit their claims and demands, under oath or affirmation, according to the statute on that subject.” A rule was accordingly taken requiring the creditors to exhibit their claims within six months. In June term, 1823, another account was presented to the court, sworn to in the usual form by the administrator, on the third day of March, 1823. The debit side adds a small sum received from the sheriff of the county of Cumberland, and otherwise does not materially differ from that of the former account, except that it gives the second instead of the twentieth of January, 1821, as the last date of salo of real estate. The credit side claims allowance for sundry disbursements, and alleged debts of preference, and commissions, and distinguishes certain debts claimed' by creditors under the rule but not entitled to be preferred in payment. For the allowance of this account a decree was made at the same term. In September term, 1823, upon an application from certain creditors of the estate, and upon *hearing counsel of the [*74 parties, the court ordered the account of June term, 1823, to be opened. Nothing further appears from the return to have been done until March term, 1824, when the court made an order that the surrogate should re-state the account retaining the several items and sums, but discriminating between the debts of preference and those not of preference; that the administrator should produce to the surrogate his *94 receipts for payments made on account of debts of preference, and such other evidence as he might have in liis possession, and on failure that the surrogate should re-state the account from the evidence aud papers in Inis possession ; and leave was given to the creditors to file exceptions to the account so to be stated by the surrogate. An account was stated by the surrogate pursuant to the requisition of this order, to which on the 7th May, 1824, exceptions were filed. These exceptions insist, among other tilings, that the accountant was not, as he ought to have been, charged with an excess of the sales over the appraisement, and with $500 or some other large sum of money, for interest money received and due on moneys in his hands; that certain items on the credit side of the account, for alleged disbursements, ought not to have been credited; that the claim of certain alleged creditors to the amounts stated, that is to say, the administrator himself and Cornelius Johnson, ought not to be allowed; and in general that the account is in divers other particulars erroneous and untrue. At June term, 1824, the matter came on upon the exceptions, in the presence of the excepting creditors,* of the administrator and of Johnson, the creditor whose demand was impugned, and of their respective counsel, and the court by their decree, after reciting that they had, heard the evidence and examined the papers, ordered the surrogate to alter and re-state the account, and in the re-statement to charge the administrator with $151.48 for moneys received by him of the estate not appraised, and an excess of sales beyond the appraisement, and with $1,343, being the interest on $5,755.96 from the 3d January, 1821, and that he strike out from the debts of preference $29.93, and reduce the claim of Cornelius Johnson to $436.11, being the amount due to him; and that he should carry out the interest on the other claims and demands against the estate to the 11th June, 1824; and thereupon strike a dividend among the creditors. At the same term of June, 1824, a re-statement was made by the surrogate according to the direc *95 tions *of the court, and the account thus ro-stated [*75 exhibits a debit- side conforming to the former accounts already mentioned, adding the two items of charge specified in the court’s order, being $0,368.56, exclusive of the interest, and making in all $7,711.56. It makes an allowance for moneys disbursed in payment of expenses and preferred debts and commissions to $611.60, and exhibits a balance of $7,099.96. It then exhibits a statement of the debts unprolerred, and which of coarse were entitled to a dividend only, as the estate was insolvent, but which had actually been paid by the administrator, together with interest cast upon them to the 11th of June, 1824. It further exhibits a statement of the debts unpreferred which remained unpaid, with interest cast on them also up to the Llth June, 1.824. It shews in the result a deficiency to pay the debts of $450.22. Upon this account, thus re-stated, the court after reciting that they had examined it, and were satisfied it was re-stated agreeably to their order, decree at the same term, that it be allowed, and that tho surrogate should strike a dividend of the estate amongst the creditors named in the account.
Tho first question to be examined respects the jurisdiction of this court, for if it bo true as insisted by the counsel of the defendant in certiorari, that such writ will not lie, all further enquiry is of course superseded.
By the thirty-third section of the act concerning the Ordinary and the 'Prerogative and Orphans’ Courts, Rev. Laws, 787, it is declared that all final sentences or decrees where no appeal is given to the Prerogative Court shall be subject to removal by certiorari into the Supreme Court. The cases in which appeals are giveu are to bo found in the first, second, twenty-first and twenty-seventh sections of the act just mentioned. The first section defines the general authority of the Ordinary, and declares it shall extend only to the granting of probate of wills, letters of administration, letters of guardianship, and to the hearing and finally determining of all disputes that may arise thereon. By the *96 second section, the Ordinary is directed to hold a Prerogative Court for the hearing and determining of all cases that should come before him, either directly or by appeal from any of the surrogates or the Orphans’ Courts. The twenty-first section provides that where doubts arise on the face of a will, or a caveat is put in against proving a will, and whenever disputes happen respecting, the existence of a will, the fairness of an inventory, or the right of administration, *76] *the surrogate shall issue citations to appear at the next Orphan’s Court, when the cause shall be heard in a summary way, and determined by the judges of the court, subject to an appeal to the Prerogative Court; and all proceedings of surrogates not brought as above mentioned, before the Orphans Court, shall be subject to an appeal to the Prerogative Court. The twenty-seventh section directs that the powers and duties relative to the admission of guardians for persons under the age of twenty-one years, shall be exercised by the Orphans’ Courts, subject to an appeal to the Prerogative Court. Bow it is most manifest, that neither in the general delegation of power to that court, nor in the particular specifications of the twenty-first and twenty-seventh sections, is an appeal given from the sentence or decree of the Orphans’ Courts on.the final settlement and allowance of the accounts of executors, administrators, guardians or trustees, mentioned in the thirtieth, thirty-first and thirty-second sections of the act to which reference has been made; and hence it clearly results that those sentences or decrees,'no appeal being given, are liable to removal here by certiorari. This subject has been before this court in the cases of Wood v. Tollman's Executors, Coxe 153, and Burroughs v. Mickle, Penn. 913, and in both the certiorari was sustained. In July, 1824, in the case of Benjamin Sulard, administrator of Thomas Sebring v. Daniel Smalley, Governor Williamson dismissed an appeal from a decree of the Orphans’ Court of Middlesex county, on the final settlement of the accounts of an administrator, *97 on the ground that the Prerogative Court had no jurisdiction. The legality of the removal of such decrees by certiorari ought now therefore to bo considered as settled.
We are then to examine the questions raised by the counsel of the plaintiff in certiorari, the accounting administrator, and the grounds which they have urged for the reversal of the decree of die Orphan’s Court.
The first relates to the item of interest, and insists that it was improperly charged against the accountant. On this subject a very wide field was explored by the plaintiff’s counsel, who made a very able and interesting discussion of the topic of the interest of money and its application to the rights and duties of an executor or administrator. The doctrines advanced were, we think, in some particulars, entirely sound and correct; in others, to say the least, very doubtful and questionable. But from the view wo take *of the present case, a minute detail and investigation [*77 are not, on our part, necessary. It is not to be controverted, at this time, that there are circumstances in which an executor or administrator is justly chargeable with interest. A distinction was suggested between the liability where minors and where creditors are to be the recipients of the estate, and it may he that sound principle requires some difference in the degree or in the strictness which would he exercised; but still it is not to be disputed that there are cases in which interest ought to ho charged in favor of creditors. To establish this general doctrine by a review of the cases which have occurred in our state, especially in the Court of Chancery, and in the courts of England and of our sister states, would be an unnecessary expenditure of time. In the case of Darrel v. Eden, cited and much relied on by the plaintiff’s counsel, from 3 Desaus. Rep. 242, the Chancellor says, that where the executor has made or received interest, or has kept money on hand which there was no reasonable ground to keep by him unemployed, he shall be charged. The decree of the Orphans’ Court in *98 the present ease does not, nor was it requisite or proper that it should, state the facts or evidence upon which the several charges were founded or directed by the court. It recites that they heard the evidence and examined the papers. .By them, it may have appeared that the administrator had actually received the interest in question, or that he had made in his own affairs profitable use of the money; or that from the times of the sales of the real estate, the money had remained out upon bonds and mortgages, drawing interest, well secured, and easily and promptly to be collected. Under either of these circumstances the charge for interest could not be resisted. If these,' or any other grounds of legal liability existed, the decree of the Orphans’ Court was right. Buhdid such circumstances exist ? Was such legal liability shewn ? That court has so decided. On whom is the duty devolved of exhibiting before this court those facts and circumstances on which the decree is to be impugned — the evidence on which it was founded ? It has been already observed that these facts and circumstances and evidence need not be stated in the decree. The act allows the removal by certiorari, but leaves everything else to the legal principles which govern that writ and the proceedings under it. The- party on whom the duty is, by those principles devolved, will be seem by an enquiry, whether an *78] order, sentence *or decree brought up here by certiorari is, in legal intendment, right or wrong ? Whether the party prosecuting the certiorari is required to impugn the proceeding below, or -the party in whose favor it has been awarded is obliged here to sustain it, by the production of the evidence on which it has been founded. The learning, on this subject is so familiar and so well understood as to leave no room for doubt or controversy. I shall content-myself with merely referring to some of the cases in this-court. Eldridge v. Lippincott, Coxe 399; Doughty v. Read, Penn. 901; Seward v. Vandegrift, Ibid. 922; Fleming v. Naoman, Ibid. 852; Martin v. Steele, Ibid. 718; Leonard *99 v. Ware, 1 South. 150. The decree is presumed right until the contrary is shown, either from the face of the decree, or by such matter dehors the record as may be the proper subject of examination. The decree stands fully supported by legal intendment, and the party in whose favor it is made, may safely rest on it until its destitution of legal support is shown by him who makes it the subject of complaint. Inasmuch then as the evidence before the Orphans’ Court has not been brought here, and as it has been shown that circumstances may hav’e existed, and that too within tho obvious compass of tho most common probability, which would fully justify the charge of interest, it must stand, unless the objections deduced from the face of the return and now to be considered are entitled to prevail.
It was contended that interest, if allowable, was charged on too great a sum ; on a sum which the administrator never at any one time had in his hands. The interest, as appeal’s by the order of the court, is charged on $5,753.96 being the balance, or moro correctly speaking, one dollar less, of the net amount of the estate after deducting from the whole amount which came into his hands, his payments for expenses and preferred debts, and the amount allowed him for commissions. There is nothing on the lace of the account from which the faintest inference can be fairly drawn that the above sum is more than came into his hands. In fact, tho debit side of the account contains nothing more than he had previously charged himself' with, except the interest and the sum of $151.48, added in the last account under the order of the court, for moneys received of the estate not appraised, and an excess of sales beyond the inventory; and against the latter charge no complaint has been made here. It will be seen from the accounts that tho administrator charged himself with the amount of tho inventory *$2,714.52 on tho 17th November, 1819, and on this [*79 amount no interest is charged until January, 1821, a period of about fourteen months. It is true it does not appear of *100 what the estate included in the inventory was composed ; whether of goods, or stock, or debts due the deceased, or what may have been the proportion of each ; but it does appear that there was a sale; and the articles sold produced more than their appraised value, and that he claims allowance in his first account only for a single note and that for a small sum, as irrecoverable. It will be seen, too, that varying from the most common, I do not say the universal, mode, the commissions are deducted not at the close of the account, the settlement of the account, but as of January, 1821, so that no interest is charged on them. It appears, then, that interest is not charged until the sales of the real estate, and until the personal estate had been for fourteen months in his hands and under his management; and then only on the balance after the deductions I have stated. Tho administrator had, it is true, in the meantime and prior to the decree of the court, made sundry payments in full of unpreferred debts, under, we may suppose, an expectation that he should have funds to pay>r all. But in order to do him ample justice in this respect, and at the same time prevent any encroachment on the just rights of other creditors, and the proportionate share of the estate to which they were entitled, and which the court could not infringe or reduce, however innocent may have been the mistake of the administrator, interest is cast and brought into account on all these payments up to the 11th of June, 1824, the same time to which the interest is cast on the balance of the estate and on the claims of the unpaid creditors, so that although interest is on the one hand charged against him, there is on the other an interest allowed to him to the very verge of the just rights of others. Indeed, it would be difficult, if not impracticable, in any other way to make up the account and preserve equal and exact justice to the administrator.and the paid and unpaid creditors. It is very certain, as remarked by one of the plaintiff’s counsel, that the interest could not have been charged on dioses in action *101 outstanding at tlio decease of the testator, because the appraisement amounts to the sum of 82,714.52 only. But there is nothing in this consideration which in itself shews that interest ought not to have been charged; or that the sum is too large. The real estate may have been and most *80] probably was sold for cash, and on securities ^drawing interest: and the part of the personal estate not consisting of dioses in action, may, in fourteen months, have been turned into them or into money.
There is nothing on the face of the account, then, which shows that the administrator has been charged with interest on a coot more than may have been in his hands, or that in this respect any injustice has been done to him.
The plaintiff’s counsel further insisted that the interest should not have been charged, because the circumstances of the estate were such that he could not put out the money in order to obtain interest; that he was compelled to keep it on hand ; that a long litigation occurred; protracted by the errors of the surrogate and the court; during which he could not pay out the money, and the termination of which lie could not anticipate : so that ho was under the necessity of holding himself always prepared. Now this argument is founded on the assumption that the money was on hand, and thus retained pending the progress of the accounts to a settlement. If such were the fact, the objection would certainly present itself in a very imposing attitude. But it is not shown to us that the money was on hand. Notwithstanding anything exhibited to us, the money may have been profitably employed by the administrator, or may have been outstanding in such manner as I have described, beariug interest, well secured and easily collectible; and it is certain from the account that the court made those moneys draw interest in his favor which lie had expended in unpreferred debts. If the estate was drawing interest, the charge cannot be resisted. If the money were on hand, that fact should have been shown. There is no ground of *102 necessary presumption that it was on hand. Chancellor Desaussure, in the case already mentioned, says very properly, there may be circumstances which may require an executor to keep money on hand. lie says also it lies with the executor to show the existence of such circumstances as would justify the departure from a rule founded on great justice and equity.
The plaintiff’s counsel further contended, that he ought not in an}’’ event to be charged with interest beyond $500, because that sum and no greater is mentioned in the exceptions filed. The language of the exception is that the administrator had not charged himself with “ $500 or some other large sum of money for interest.” The object of *81] filing written exceptions is not merely to *sustain future proceedings in objection to the account, but to apprise the accountant of the matters in respect to which his account will be controverted. Both these objects are amply attained by the exception in question. The accountant is fully informed that it is intended to charge him with interest. The precise sum is not indeed mentioned, nor in most cases could it be done with safety or confidence. Interest, he is apprised, will be claimed; $500, or some other large sum; what sum, must be left to the requisition which may be shown by the situation of affairs when they come to be examined, and to the judgment of the court on the circumstances of the case.
Considerable reliance, in opposition to the charge of interest, was placed on the fact that the first two accounts contained no item of interest, and that they had been sworn to by the administrator. By far too much respect is here claimed for the oath of the accountant. It would be an unnatural and inordinate extension of its influence to consider it conclusive to rep.el. such a charge, or that the court could not legally introduce such an item, because of the oath, if otherwise they found just ground for it. The rule in Chancery, with respect to an answer responsive to the *103 charging parts of the complainant’s bill, bears no analogy. There is a much more intimate and natural relation to the principle of accounting in that court. There, small sums are allowed, if staled when and to whom paid, and positively and not to mere belief, sworn to by the accountant. Com. Dig. Am. ed. tit. Chancery, Account, 2 A. 4. I do not intend to say this rule has been or ought to be adopted in our courts; but to shew that there is no court acting on fixed and well considered principles which has ever given such operation to the oath of the party as was claimed on this occasion.
The next principal objection to the decree, is, that certain items on the credit side of the account were struck out.; and it seemed to be tho impression of tho plaintiff’s counsel that some of these had been struck out by the surrogate without the order of the court. The real state of the case apparent on the papers is thus. The court ordered the credit side of the account to be reduced by §29.93, aud the credit side of the last account being §611.60, is exactly that sum less than the account excepted to 8641.53; aud it is rendered clear that the items struck out and reduced are those intended by the court, because the amount of tho items, three, * twelve and sixteen, struck out, with the amount [*82 taken from twenty-two, which is tho item reduced, is §29.93; and on the face of the last account these items are stated as those struck out and reduced by the court; aud by the decree of the court made on that account it is expressly declared to be re-stated agreeably to the previous order of the court. There is nothing oil the face of tho account or papers which serves to show that these items were improperly rejected by the court. The principle stated by the plaintiff’s counsel may be sound, that where an administrator does actually and in good faith pay money connected with tho estate, it ought to be allowed. But the application of this principle to the case before us is yet to bo seen. Until it is shown to have been disregarded by the court we have no right to act as if it had been.
*104 In the last place, it is contended that the decree ought to be reversed, because a dividend is not, as it ought to have been, struck. The latest proceeding returned with the certiorari is the decree of the court, which I have already mentioned, that the account as re-stated by the surrogate should bo allowed, and that the surrogate should strike a dividend of the estate among the several creditors named in the account. It would be a very harsh and oppressive measure upon all parties, if this court were compelled to set aside all that has been done, because some acts, in themselves distinct from the proceedings brought before us, have-not been done. The measure will be best appreciated by considering this objection, as indeed it ought to be, distinct-from the others, and on the presumption that the account is-correct. For if this objection is now sustained, we must do-the like when the account is acknowledged to be correct. Under such circumstances, to set aside the whole, and put the parties back to seek a new report from the surrogate,, would be a ruinous procedure. The account, as it now stands, furnishes the ready means of ascertaining the dividend of each creditor. The amount of the estate to be divided, the amount of debts among which the dividend is to-be made, and the amount of each individual debt are shewn. The dividend of each is the result of a very plain and simple-calculation. Whether the court were bound to go further, and ascertain and decree the specific dividend of each creditor, we need not decide; because if there be' anything-wanting in this respect, we do not think we ought to make-that deficiency the cause of destroying the proceedings already taken and correct in themselves. If anything more *83] *is required to bo done, we see nothing to prevent it from being yet dono. The act concerning the estates of persons who die insolvent, Rev. Laws 768, sec. 10, directs, that “ the said personal and real estate which shall come to the hands of the said executor or administrator, the preferred debts as mentioned in the second section of this act, and the *105 reasonable allowance which may be decreed by the court to the executor or administrator for care and expenses being first paid, shall be distributed to the said several creditors by the said executor or administrator, in proportion to the sums that shall he found due to them respectively as aforesaid, under the direction of the said court from time to time, as may he found convenient and just.” We shall therefore send the proceedings to the Orphans’ Court, that they may proceed thereon as may be legal.
Let the decree be affirmed, with costs; and let the proceedings be remitted to the Orphans’ Court, to be proceeded on agreeably to law.